MILES G. DOBBINS, plaintiff in error, *vs.* CHAS. L. DUPREE, defendant in error.

1. The verdict is against the weight of the evidence.
2. A judgment regularly entered up, upon an acknowledgment of service and confession of judgment by an attorney at law, is not void, but only voidable, and that upon clear and decisive proof that such attorney at law acted without any authority in the premises for the party (whom) he represented.
3. No warrant of attorney being required by the laws of this State or the practice of its Courts to entitle an attorney at law to appear for a party litigant, the strong presumption from his appearance is that he was authorized.

Motion to set aside Confession of Judgment. Decided by Judge SPEER. Spalding Superior Court, February Term, 1867.

Charles L. Dupree as security, and Leonard T. Doyal as

maker, were sued by plaintiff in error in said Court on notes amounting to $3,180.00.   Service was acknowledged 30th April, 1861, by "Doyal & Cook, defendants' attorneys," and at November Term, 1861, judgment was confessed against said defendants by Doyal & Cook.

At November Term, 1866, Dupree moved to set aside the said judgment, alleging that neither Doyal nor Cook nor Doyal and Cook were his attorneys or authorized to act for him as aforesaid, and that he had a defence, because said note was usurious.   These allegations were denied, and for that and because Dupree (as was contended) was bound anyhow by the acts of said attorneys, Dobbins resisted said motion.   At the trial, the Court held that the movant, Dupree, had the right to begin and conclude in said case, and attorneys for Dobbins excepted. Attorneys for Dupree read in evidence to the jury the original petition, with the entries thereon, as aforesaid.

They then examined as a witness said L. T. DOYAL, who testified that he was in the army when the acknowledgment and confession were made, that they were in the hand-writing of V. C. Cook ; witness had told Cook to acknowledge service for him on any suit which might be brought against him, but witness had no authority to authorize him to do so for Dupree, and was not Dupree's attorney in this case. Cook was a young lawyer, having no visible means, unfamiliar with the rules of practice, authorized to use witness' name in the firm, though witness did not regard it as a partnership except to that extent.

At the date of the confession witness was in Virginia ; there was a statute continuing causes when counsel was in the army.   Witness knew of this judgment in June or the fall of 1862 ; Dupree knew in February or March, 1866, of this execution, (not of the Neal *fi. fa.*)   The lands of Dupree have been sold the last time long enough to have made a crop.

CHARLES L. DUPREE, in his own behalf, swore that he did not give Cook or any one else authority to make said acknowledgment or said confession ; that when the confession

was taken he and his family were sick, and one of his children a corpse in the house; that he never knew of this judgment till March (then) last; that at the date of the judgment he had a good property; that Cook has nothing; that Cook was frequently in his house, familiar with him—had written some deeds for him, but had never been authorized to confess judgment in any case against him; that Sloan & Oatman never sued witness, so far as he knew; that Cook never attended to his business for him; the case of Oatman is still unsettled—that he had paid part of the money on it, and that Doyal & Cook were not employed by him to defend that case.

He further swore that Dobbins said, before suit, that he wanted Doyal to pay him; Dobbins never said to witness that it was best that suit be brought, nor did witness tell Dobbins to sue, nor did Dobbins tell witness he was going to sue. Witness said, in 1864, I told Dobbins I was secured by a mortgage on Doyal's negroes. Dobbins told me he would not take Confederate money now (then).

Movant closed.

DOBBINS swore in his own behalf: I saw Dupree before sueing, and told him I thought it best to sue; that I did not wish to sue Doyal, that Doyal was in debt. At last Dupree said it was best to sue. The note belonged to some orphans. 'I told Dupree in 1863 I would take Confederate money; I refused to take it in 1864 or 1865. I knew nothing of Cook's acknowledging service; how much of the note is usury, I know not—I think I charged him sixteen per cent. for the money; I think the interest was added in the small note; I think I took sixteen per cent. off the large note.

Doyal was in the war when I spoke to Dupree of sueing; he seemed unwilling to be sued—I left it to him, and told him as Doyal was in the war, and embarrassed, it was best for him (Dupree) that I should sue. In 1863 I told him I could use Confederate money in settling with the guardian.

DUPREE was re-introduced, and the writ in Sloan & Oatman case was handed him. He admitted then that he was served in said case; he stated that Doyal was in Spalding

county in 1860, that he had paid one hundred dollars on the Sloan & Oatman case since the judgment, that he knew nothing of any defence in that case, and that he never gave Cook authority to confess judgment in that case.

A. D. NUNNALLY swore, that he did not know whether Dupree was at the Court when the confession was taken. Sloan & Oatman's case was defended, and Dupree knew of the suit. Witness' recollection is, that at one time, when said (S. & O.) case was pending, Dupree was in the court-house and Doyal & Cook were defending him; don't recollect when it was, nor how long the case was. pending, but witness feared he would not get a judgment.

L. T. DOYAL re-introduced, swore: That Cook had no authority to represent the case of Sloan & Oatman. Witness represented Dupree, and plead failure of contract. Cook had no authority to represent witness in any litigation in which Doyal & Campbell were interested. Dupree frequently consulted witness while he and Cook were partners. Dupree and Cook were intimate, and Cook frequently at Dupree's house. Cook had authority to acknowledge service for me, (to save my wife from mortification,) but no authority to confess judgment.

Attorneys for Dobbins introduced and read in evidence the Sloan & Oatman case aforesaid. It was an action against Dupree, as trustee, for the price of certain marble tombstones, brought by Nunnally & Dismuke, as plaintiff's attorneys, to February Term, 1860, of Spalding Inferior Court, which had been personally served on Dupree, to which Doyal & Campbell had plead, and on which a confession was made at February Term, 1861, signed "Doyal & Cook, attorneys for defendants."

They also read the answers of VIRGIL C. COOK to interrogatories, in substance as follows: During 1861 and 1862 I resided in Griffin, Georgia, and was practicing law with L. T. Doyal. I understood that I was to represent Doyal in all cases in which he was concerned, and in all suits that might be brought against him. During those years Doyal and myself were the acting attorneys of Dupree; I knew of no

others. I do not distinctly recollect the Dobbins suit, but if I acknowledged service, it was with the understanding that I was authorized to do so by Dupree. I never acknowledged service and confessed judgment without authority, I think; if I did, I thought I had authority. I don't know why Dobbins' suit was brought.

His answers to the cross-interrogatories were substantially as follows : I have no distinct recollection about the Dobbins case ; I had no written authority to acknowledge or confess for Dupree. I understood I had authority to acknowledge and confess for Doyal in any case brought against him. I don't think I ever acknowledged service for any one, as a favor, without authority, and don't think I ever saw other attorneys do so. At that time, Doyal and Dupree each had considerable property, I don't know how much, but I don't know what were their liabilities.

After the evidence had closed and argument was had, the Court charged the jury, among other things, that Dupree's mere standing by after knowledge of the judgment, and taking no steps to set it aside for a few months, was not such an acquiescence or ratification as would bind him.

The Court was requested to charge that if the attorney acted without authority in acknowledging service and confessing judgment for the defendant, then the judgment would be sustained in law, but the defendant would be let in to make any legal defence he might have, and the Court would open the case for that purpose and stay all proceedings.

The Court refused so to charge, but charged the jury that if they believed from the evidence that neither Doyal nor Cook were authorized by Dupree to acknowledge service and confess judgment for him in this case, then they must find that the judgment is void.

The verdict was : " We, the jury, find for Charles L. Dupree, and set aside the judgment as void."

A new trial was moved for, upon the grounds—

1st. Because the verdict was contrary to the evidence and the weight of the evidence and to the charge of the Court.

Dobbins *vs.* Dupree.

2d. Because the Court erred in charging as aforesaid as to acquiescence or ratification.

3d. Because the Court erred in refusing to charge as requested.

4th. Because the Court erred in charging that if the jury believed neither Doyal nor Cook was authorized to make the confession, the judgment must be set aside; and,

5th. Because the Court erred in holding that attorneys for Dobbins had not the right to begin and conclude the argument.

The motion was overruled by the Court, and this is assigned as error.

BOYNTON & DISMUKE, Q. A. ALFORD, WM. DOUGHERTY, attorneys for plaintiff in error.

PEEPLES & STEWART, attorneys for defendant in error.

HARRIS, J.

A question of practice under the rules of the Superior Courts is made by the bill of exceptions, which we do not find it necessary to decide now. Of this question so made, that is as to which party in this case belonged the right to open and conclude the argument, it may not be inappropriate, however, to say that it could only have arisen in this case from the form pursued by the petitioner below, in calling on the 'other party *to show cause* why the judgment in favor of that party against the petitioner should not be vacated and set aside for want of legal service, etc. If strict rule had been adhered to, it would have been difficult to deny to the party called on to show cause the opening and conclusion, indeed from responding to the call; but looking to the end sought to be attained, and thinking that the proceeding to accomplish the purpose of petitioner should have been a simple motion setting forth the grounds upon which the Court was asked to vacate the judgment, accompanied by notice in writing thereof to the opposite party, it is believed that as to the right of the movant, on a motion so framed

8

and addressed to the Court, that there could not have been a doubt that the *onus* was on him, to open and conclude. If this question should again arise, we will then consider it carefully, and by a decision endeavor to settle a matter made embarrassing most always by the form adopted.

1. The verdict on the issue made upon the petition of Dupree is alleged to be contrary to and against the weight of evidence. We are of that opinion. There is no testimony positive or circumstantial denying the authority of Cook, the attorney at law, to acknowledge service of the declaration against Doyal principal and Dupree security for Dupree, or to confess judgment for him, except the testimony of Dupree himself. Nor can we infer from any fact in the case the slightest thing corroborative of his denial of having given authority to Cook to represent him.

The testimony of Dupree as to occurrences before suit brought, is contradicted by Dobbins, who seems to have no personal interest in the judgment, (it being founded on a note due to some orphans,) and whose credibility, therefore, cannot be affected by interest.

As to the authority to acknowledge service of the writ and to confess judgment, Cook asserts that during the years 1861 and 1862 (it was in April, 1861, service was acknowledged, and judgment confessed in November, 1862), Doyal & Cook were the sole attorneys at law of Dupree—that the acknowledgment of service by him was with the understanding that he was authorized to make it by Dupree; that he never acknowledged service or confessed judgment, he thinks, without authority; does not think that he ever acknowledged service for any one as a favor without authority, and don't think he ever saw other attorneys do so. Now this is fully as definite as the testimony of Dupree, but when taken in connexion with Dobbins', as also the suit in the case of Sloan and Oatman, which was vigorously defended according to Colonel Nunnally's recollection, and confession of judgment by Doyal & Cook in that case during the February term just before the acknowledgment of service of the writ in favor of Dobbins: it is difficult, indeed impossible, to avoid a strong con-

viction that Cook had authority to acknowledge service for Dupree, as he clearly had for Doyal, his partner, absent in military service. Dupree, secured by mortgage from Doyal, was probably in consequence thereof careless ; the testimony shows his memory to be at fault in several particulars, which detract from his weight and adds force to the representations of Cook. Nor is the fact that Doyal, the principal debtor— and in the army, too—knew of this judgment some time in 1862, whilst Dupree, at home in the country, does not hear of it until February, 1866, without significance. It seems passing strange that a security with a mortgage on negroes, his principal being embarrassed in his circumstances, should sit still, not a word uttered by him, not an enquiry made as to the note on which he was a security, and the negroes made free as early as May, 1865, and he hears nothing of the judgment against him till February, 1866. We find nothing in the facts contained in the record, nor do we see the slightest thing in the conduct of Dupree to entitle him to have the judgment against him set aside as void.

2. A more dangerous doctrine to the interests of society we cannot well conceive than that insisted on, viz : that a judgment regularly entered up, upon an acknowledgment of service of the writ and confession by an attorney at law, can be set aside and declared void upon the mere unsupported testimony of the party against whom the judgment is rendered.

Judgments thus rendered, and which have gone to record, should not be vacated but upon *the clearest and most decisive proof* that an attorney at law acted without any authority whatever in the case from the party he represented. .

3. Again, there is another view, which has had great influence in conducting us to the conclusions we have arrived. It is a well known fact, that for forty years past, neither the laws of the State nor the rules of Court required what was previously customary—the production and filing in the Clerk's office of a written warrant or authority to an attorney at law, to enable him to appear and represent a party litigant. From this alteration in practice, the Courts have necessarily

Dobbins *vs.* Dupree.

acted upon the presumption that every attorney at law representing a party was duly authorized; and this presumption derives great strength from the statutory provision for the punishment of any one representing him as an attorney at law in the course of a suit or proceeding in Court, whereby the party so represented suffered loss or injury, when such attorney at law was not authorized.

Besides this criminal liability, there exists a civil liability to damages against any unauthorized attorney at law for any loss or injury occasioned by his representation of a person who gave him no authority. By the Code, another safeguard has been provided for parties litigant: that is, by punishing as for a contempt the attorney at law who represents a party without authority, in a fine not less than $500.00.

In awarding a new trial, it seems but just and equitable that Mr. Dobbins should remit in writing on the judgment and execution the full amount of usurious interest which he admits in his testimony infects the note or notes on which the judgment is founded; that is to say, all interest over and above seven per cent.

Judgment reversed and new trial ordered.